is in the courtroom today, and Dan Donovan is co-counsel. I'll address the issues that we raised on appeal. Mr. Donovan. Just one moment. Is the audio on? Yes. It is? Okay. Maybe you can speak a little closer to the microphone. Okay. I'll address the issues that we raised on appeal. Mr. Donovan will address the issues that are on a cross-appeal. Last week, the U.S. Supreme Court held that any rule declaring prosecutors may hide, defendants must seek, is not tenable, and a system constitutionally bound to accord defendants due process. It's always incumbent upon the prosecutor to say – I'm sorry. I didn't understand. I mean, I didn't hear a word you said. Okay. So if you're going to – you're either going to have to speak into the mic or keep your head up one or the other. Okay. I'll try. Thank you. I just couldn't – I'm sorry. All right. It's to your advantage that we hear you. Okay. Last week, on the 24th, the U.S. Supreme Court held that the rule declaring prosecutors may hide, defendants must seek, is not tenable, and a system constitutionally bound to accord defendants due process. That was it. Okay. Well, now I heard you, but now I don't understand you conceptually. What do you – what point does this go to? Okay. It's our contention that in this case, the prosecutors did not set the record straight, and they had several opportunities to do so. One of the main contentions that we have is not only did the judge find that Mr. Peterson was a conman, a liar, a pathological liar, a professional liar, a perjurer, but the court cast – or was upset when Mr. Lentz had sent. Now, it's important for us at this late stage to have this court look at Exhibits No. 595 and Exhibit 301. And in the excerpts of record that you ordered up from the court, Excerpt No. 57, Tab 6, page 20. If you look at these documents together, you're going to see that the record was not set straight on an issue concerning the Otto Baltans matter. The tab referenced in the docket No. 57 shows that Ben Scotter, when he got his search warrant, found out that the Otto's judgment had been paid off in full in the late summer of 1994. Well, counsel, as I understand the law, you have to be able, at this stage, after a jury verdict, to establish that there was actual perjury. Is it? Yes. Are we in agreement so far? Yes. All right. What is your strongest argument with respect to actual perjury made out in this record? This is the Baltans-Otto matter. The prosecutor knew that in 1994 that the Otto judgment had been paid in full. When they came to trial, they put Mr. Peterson on, and they had Mr. Peterson testify on page 600 of the transcript and at page 736 that the Otto judgment was not paid in full, that he was using letters sent and dated October 1995 from Mr. Lentz together with a subpoena so that he could show those to Mr. Baltans. And the representation to the court was that by doing that, he was keeping Mr. Peterson from a supplemental proceedings because Mr. Baltans would be able to break Mr. Peterson down and would discover that Mr. Peterson was using and banking with Mountain Bank. That is a direct lie that was known to the government. Baltans, when he testifies, he testifies. How do we know that? How do we know that? Because you can look at the exhibits and you can read them and you can look at the, and you can look. How do we know that it was, A, a lie, and, B, that the government knowingly subpoenaed perjury? That the reason I say they knowingly did it was the tab in exhibit number 57, at page, behind tab 6, page 20. Mr. Benz-Cotter states that he went and interviewed, this is when he's getting a search warrant, he interviewed about the Otto obligation and learned that it had been paid in full in the summer of 1994. Exhibit 595 says that it was paid in full in October 1994. So it was all done in 94. And yet they're presenting something to say letters and subpoenas written in 95 relate to the Baltans' matter. We also know that in their 302, when they interviewed Peterson when, after he pled guilty, that he's saying that letters that were used had nothing to do with Ottos or Baltans. They were supposed to be for the Washington Power Company and an assembly council, different matter. The government, when we brought out, we're the ones that brought out exhibit 595 at trial. And that's when Mr. Baltan says, well, gee, in 95, I don't have anything to do with Petersons because the Otto judgment was paid off in 94. The government doesn't come forward and say, oh, we got the wrong stuff. They don't even cross-examine on that. So it's our position that the Otto judgment was paid off in 94. Exhibit 595 shows it. We're the ones that had to bring it out. Peterson, when he testifies, look at page 600 and 736. Peterson's going to lie and he says, well, I paid that off in 96. No, no, I'm sure I paid it off in December 1995. He had to get the 95 reference in because of the statute of limitations in an overt act, and he intentionally does that, and it's not corrected by the government. So he fumbles a little bit. He says, you know, I faxed those things to Mr. Baltan's cross-examination. Well, if you fax them to Mr. Baltan's, we're going to see the fax transmittal in Baltan's files. His mind's running and he says, well, maybe I didn't do that. And again, the government is sitting on their hands. So it's our position that those, when you read those and look at that, that shows knowing and not correcting the record, and they need to correct it. The part that I've got is, first of all, all this was before the jury. So Peterson's credibility was plainly very much at issue. And we have the jury decision. Then we have a motion for acquittal and new trial, which the district judge denied. And there's no record upon which we can say that the prosecution knowingly suborned perjury. The case law ---- It doesn't affect the service of prior fact on the issue, and I just don't know how we can do that. Well, the case law is whether if they knowingly did it, it's an automatic reversal. If they should have known, it's also a reversal. How do we ---- I mean, see, the problem is it wasn't brought up in the district court in a way that allows a record for review. Well, it was brought up in the new trial thing that when, by the time the judge gets around to his order, he is mistaken on some of the facts, where he says that there was, Mr. Lentz was continuing to take money out of his trust account when he only did it on one deposit and three business days. Judge, by the time Judge Malloy gets to it, he's wrong and it looks like he thought there was a series of more withdrawals of cash beyond those three business days when the first notice of the NSF check was there. So he was incorrect on the facts at that time. He was resistant to striking Peterson's testimony. He thought about it heavily. And what he did is he says, I think that the appellate court needs to look at that issue and I think they have to look at the FDIC. So I'm going to let Mr. Lentz stay out of prison and he is out on bond because those are significant issues that I want to pass on to this court. So our reading of that order is that he was not disfavorable to us. He was troubled and he was passing the buck to this court. And he wants this court to say that it's not right to have a caliber of Mr. Peterson come into the court who does not appreciate his oath, who disavows his oath and tells the jurors point blank, you can believe  that. So I'm going to let Mr. Lentz stay out of prison and he is out on bond because  So I'm going to let Mr. Lentz stay out of prison and he wants this court to say that it's not right to have a caliber of Mr. Peterson come into the court who does not appreciate his oath, who disavows his oath and tells the jurors point blank, you can believe that. So I'm going to let Mr. Lentz stay out of prison and he is out on bond because those are significant issues that I want to pass on to this court. So I'm going to let Mr. Lentz stay out of prison and he wants this court to say that it's not right to have a caliber of Mr. Peterson come into the court who does not appreciate his oath, who disavows his oath and tells the jurors point blank, you can believe that. So I'm going to let Mr. Lentz stay out of prison and he wants this court to say that it's not right to have a caliber of Mr. Peterson come into the court who does not    it's not right to have a caliber of Mr. Peterson come into the court who does not He was asked, when was the first time you ever came up with that, basically? And he says, well, today, basically, because in his grand jury testimony, he admitted that he knew nothing about the relationship of the trust accounts in March. And he admitted that, because I said to him, in your grand jury testimony, didn't you say that you had no personal knowledge about the March documentation? And that that was a deal between Buster Schreiber and Mr. Lentz. And he point blank, in the courtroom, said, yes, that was my testimony at the grand jury. But today, I'm given a different testimony. We think that that was enough to trigger the judge to say, whoa, whoa, whoa. This guy knows how to take an oath. Took an oath in the grand jury. He gave his story there. He's given his story here. This is a pathological liar. We think that the Tamaz case. But what's the import of concluding that somebody's a pathological liar? That the judge should bar him from testifying in the courtroom? Yes. The judge says, you know, if this was before the rules of evidence. Is that a clinical assessment, that he's a pathological liar? He's incapable of stating his name correctly? He's incapable of appreciating his oath and his moral obligation. You have a moral obligation. When you come into the courtroom, you have a moral obligation and we have morals. We all have morals. And if a judge picks up, that this guy will disavow his oath. He has no moral standing. Counsel, in almost every case, we have parties who, we have at least one side, and perhaps both, who don't have an interest in having the truth come out. And it is not unusual, particularly in criminal cases, to have competing views as to what happens. Sometimes in which it is very clear that one side or the other either doesn't have a very clear recollection, or somebody is lying. Now, that's not unusual, but we don't exclude witnesses on the judge's own motion and keep them from the jury. We allow the jury to sort of. But doesn't the prosecutor in the federal system have a duty to come forward and say, indirect, we're not going to leave it to the defense. This guy gave this story in a 302 after he pled guilty. This guy gave a different story under oath when he was at the grand jury. He's given this testimony, and it's the prosecutor that is bringing out all the inconsistent statements and everything. And then they can say, because we brought it out, and we presented this witness, and we didn't vouch for him by the way we did the plea agreement. We didn't vouch to tell the jury some federal judge has continued this when it was the government itself that continued it, and it's a federal judge that's watching. When they're doing all of those things to leak credence there, and then we're seeking and hiding, because now we're going to rely on the ability of the defendants to come forward. I submit to you that it's the government and the prosecutor that has to do all of those things in their direct examination and leave it to the jury then to judge credibility. But when they hide it, and they just present one version, and they misrepresent the, I'm going to run out of time, and I wanted to get to the FDIC issue. But when they hide, when they hide like that, that's not right. I don't want to keep you from getting to that issue, but I've heard you make two different arguments. One was that the prosecution here failed to come forward and point out the inconsistencies in Mr. Peterson's testimony. The second was that the judge should have excluded Mr. Peterson. Now, are you making both of those arguments? I'm making both, and the judge picked up on that, and he says, I'm going to strike his testimony. I have found him to be a person who is not worthy of being a witness in this case, that he disavowed his own oath, he doesn't know how to tell the truth, and he doesn't have the moral fiber. That's there. What happened then is the prosecutor says, well, let's give a different type of jury instruction other than the one that comes out of the Ninth Circuit panel, and we'll bargain and we'll do that so we can still argue. Then when they get in their closing argument, they say, don't even consider Peterson in their opening. So then we say, fine, don't consider Peterson, and you don't have any testimony against my client from anyone else. And the people that are in the bank that would know if money is being taken have exonerated my client and said he was not involved. So what happens? The prosecutor then gets up on rebuttal and says, now you should consider Peterson's testimony. Is that fair? Is that fundamental fairness? Is that hide-and-seek that the Supreme Court wrote on last week? We submit that if they didn't knowingly do what they did, that they should have known that they were in a pickle when Mr. Schreiber, who they relied on in the grand jury to say Mr. Lynch was involved, when they had Mr. Schreiber say Lynch was not involved, the prosecution then overemphasized and needed Peterson, and if they didn't do it intentionally, by golly, they should have known. I'd like to address the FDIC briefly, and then I'll reserve for the other time. The FDIC argument is fairly simple. We have some documents in the record where they did it under penalty of perjury. They did it for the other institution that Mr. Allen was charged with. They had penalty of perjury to say that it was insured by the Credit Union Association. I did not stipulate to it. We didn't object. It came in, and what it did was the judge says at 5 o'clock, this thing is dragging on, here's what I'm going to do, and the judge goes through the list, and he admitted documents at 5 o'clock. As soon as it came an issue, we moved a strike. You can move things. When an exhibit goes into evidence, you don't admit to the truth of what's in it. An exhibit goes in, and you get to argue it. What we did was we said, judge, look, we just looked at this stuff, and there's no penalty under perjury. This is a Sixth Amendment to confrontation. It's a constitutional issue, and it's not there. We moved a strike. We want paragraph 4 out of there. Now, the government had every opportunity to say, we want to reopen the case, judge. We want to call Havens back on the stand, because Havens can say it's federally insured. We want to do this. We want judicial notice. We want to do anything. Instead, they said, no, even though it's not under penalty of perjury, and even though you need to confront witnesses on facts like that from the Sixth Amendment, it has to be under oath, even though we did it correctly on the other things with Cagle and with the other institution, we're going to rely on this. And the judge says, well, you better get the original. I'm sorry. Counsel, this won't count against your time, but you mentioned a Supreme Court case last week. If you want us to look at it, please give the citation to the three judges on the panel, deliver them to the deputy clerk, and also give the same citation to opposing counsel. All right. The clerk can give you the form that we use here in the court, if you'd like. Okay. Thank you. We'll now hear from the government. May it please the Court. There's simply no evidence in the record in this case that the government Counsel, if you wouldn't mind, for some reason, this is a very touchy mic, and you have to be, I guess, fairly close to it. Okay. I'll try again. No, that's so much better. So much better. There's simply no evidence in the record in this case that the government relied on perjury testimony at trial or that the jury relied on perjury testimony in the trial. The District Court Judge Molloy was entirely correct in denying Lentz's motion for a new trial. The record simply doesn't reflect that any perjury testimony was introduced in this case. Lentz plainly, excuse me, Mr. Peterson plainly admitted at trial that he was a con man, that he had created fictitious documents, that he had lied to his co-conspirators, that the big deal was nonexistent. But nonetheless, there's no evidence that he testified in any manner that was false at trial. And the court ---- It's clear that Judge Molloy was troubled. What do you make of the whoa, whoa, whoa comment? He didn't like the witness. We obviously didn't like the witness either and would have preferred not to use him. But you take your witnesses as you find them. The only ---- I've been through this record I don't know how many times because I did not try the case. And the only instance that I can find where Mr. Peterson admitted that he testified differently in the past and he testified a different way at the trial was one place, and I'm sorry, I don't have the page number with me right now, where he was asked on cross-examination whether he had ever used monies from Mountain Bank to procure women for Mr. Schreiber. And he testified during trial, no, he didn't use any Mountain Bank money for that purpose. He was then impeached on cross-examination, and he admitted that during a deposition he had indeed said that he had used money from the bank for that purpose. And he said that I believe he had done it on two separate occasions. It's the only instance where I can find where there's any admission of a lie in either this testimony or in prior testimony. And it's my understanding that that testimony about the deposition was the basis for Judge Malloy's instruction that Mr. Peterson testified falsely in the past. The judge never made any finding or any instruction to the jury that Mr. Peterson lied during this trial. And I think that his instructions are very clear. He said, you have heard evidence that John Peterson, a witness, has been convicted of felonies and lied under oath on prior occasions. You may consider this evidence along with other pertinent evidence in deciding whether or not to believe John Peterson and how much weight to give to his testimony. So I don't think there's been any finding that he committed perjury at this trial. In addition, I think that any just the claims that Counsel, would you specifically respond to the argument that Mr. Bartlett made this morning in open court about this 1994, 1995 issue? I don't entirely understand it, to be quite honest. The testimony, regardless of when the case may have been settled, the documents that were admitted that Mr. Lentz had falsified concerning the lawsuit by Mr. Bolton's on behalf of his client, Mrs. Otto, were government exhibits 302, 304, 305, and 306. They're part of the government supplemental exhibits in this record excerpts in this case. Those letters were dated January 1994 through March of 1994. So the documents that we were attempting to admit were indeed 1994 documents, not 1996 documents. We weren't attempting to show that the matter wasn't settled at all or that it was only settled two years later. So I truly do not understand the argument. I think that the most that's been shown in this case is that there may be some discrepancies between the trial testimony of Mr. Peterson and prior testimony that he gave. But as we all know, discrepancies don't amount to knowing perjury testimony. They keep addressing the issue that he testified differently in the grand jury. The grand jury testimony of Mr. Peterson and of Mr. Schreiber is not part of the record in this case. They never asked for it to be marked as an exhibit. It was never admitted during the trial or made a part of the record. So asking this court to now make a finding that Mr. Peterson committed perjury on the basis of a few questions to Mr. Peterson and Mr. Schreiber that incorporates snippets of their testimony during the grand jury, I think is an impossible task for this court to perform. Even if the record shows that there were prior and consistent statements, it's not tantamount to perjury. And Lentz hasn't provided any evidence that the prosecutor deliberately encouraged false testimony in this case. He points in his reply brief to 302s which supposedly are different from the trial testimony. Those 302s, again, are not part of the record in this case. The plea agreement which he points to, which I don't entirely understand how a plea agreement of Mr. Peterson is proof that he committed perjury at trial, was not objected to at all by Mr. Lentz's attorney at trial. He's now claiming that that same plea agreement is objectionable, that one of the paragraphs should have been stricken, and that it shows that he committed perjury during the trial in this case. Mr. Lentz's attorney extensively cross-examined Mr. Peterson about the supposed discrepancies in his testimony. He was subject to rigorous cross-examination about his motives to testify falsely. His credibility was vigorously attacked during closing argument, and the court specifically instructed the jury on pages 1086 and 1087 of the transcript to scrutinize Peterson's testimony very, very carefully in this case. There's simply, again, no basis for the assertion that is being made here that it was the prosecutor's job to bring out inconsistencies in trial. There's no law that says that that has to happen, and inconsistency is not the same as a knowing false statement. Moreover, notwithstanding Judge Malloy's difficulties with Mr. Peterson as a witness, he correctly found that there was no prosecutorial misconduct in this case, and we believe that that finding should not be disturbed. As far as striking Mr. Peterson's testimony is concerned, Mr. Peterson was certainly competent to be a witness under Rule 601. There's no evidence that he did not understand the meaning of the oath under Federal Rule of Evidence 603, and that the truthfulness of his testimony and his credibility are simply jury matters. If I can change subjects just for a minute, I'd like to ‑‑ I erred in our brief on one part. On the section on overt acts, where we were arguing that the evidence was sufficient to show that there were overt acts within the statute of limitations, it's on page 35 of our brief, the government says that we presented undisputed evidence that Mr. Lentz or his co‑conspirators engaged in overt acts after October 19, 1995, and we talk about several overt acts. I left out the citations to the most important and undisputed overt act, which is on October 20, 1995, Mr. Lentz sent a letter to Mr. Peterson that enclosed a fictitious subpoena, allegedly from the Northern District of California, requiring Mr. Peterson's appearance in a civil deposition, I don't recall in what city in Montana. It's undisputed that Mr. Lentz created that fictitious subpoena and that he wrote that letter. Now, you're referring to something that you should have mentioned in your brief. Yes. Is there a citation to the record to validate that? Yes. A citation to the record? The citations to the record should have been government exhibit 301, which is part of the record excerpts, and the transcript sites are pages 443 to 447. The IRSA ‑‑ This relates to what ‑‑ Overt acts. Well, I'm looking at page 35. It's your ‑‑ the government's brief, right? On my brief, it should have been four lines from the bottom where I say these were charged as overt acts 73, 75 to 76 and 78, and the citations should be added for transcript pages 443 to 447 and government exhibit 301. And I apologize for omitting that in the past. If the Court does not have additional questions, I would like to get to the cross-appeal in the sentencing argument. Certainly. On the FDIC certificate. Clearly, it's not admissible, and there was no statement under oath authenticating it. But there was a stipulation that it ‑‑ Correct. ‑‑could come in. And so I take it your position is that whether or not there was, in effect, error in putting it in the way it came in, that the error, that there was no objection and, therefore, no plain error? Correct. And I don't think that there was error in this case. It was stipulated to. Because it was stipulated. And during ‑‑ the issue was not raised until the next to last day of trial. I guess at the time, right before the Rule 29 motions. And the judge said, but you stipulated to it, and the defense counsel said, yes, we did, but we now object to one of the paragraphs of it. I also think that under the case law of this circuit and following the Tenth Circuit, that it was admissible, even without being under penalty of perjury. I guess you disagree with us. Well, yeah. I just don't think anything can just sort of ‑‑ any piece of paper can waft in. But no matter how much of a business record or how much of a whatever it is, you still normally have to have somebody stand up and say that, or it has to be a declaration that's available. But if it was stipulated to, it was stipulated to. Is it your point that counsel waited too long to raise this issue? Because it was in fact raised before the judge. The judge said, well, you stipulated to it, and then there was a motion after that, was there not? No, there never was. I don't recall that there was a specific motion to ‑‑ there may have been a motion to strike. I don't ‑‑ But counsel in open court this morning said there was a motion to strike. I know. And I don't recall that that occurred. I mean, that's the best that I can say. I just, from my review of the record, I know that ‑‑ Well, counsel can probably give us a reference to the transcript. I know that ‑‑ I recall that there was some discussion of, well, we think that paragraph 4 ‑‑ I remember reading it over the other night, something about maybe there was paragraph 4 should be stricken. I remember some discussion about that. But I don't remember exactly what the motion was. Is the government's position that it's too late? I mean, you know, trials move along sometimes under enormous pressure, and as long as it's before the instructions are delivered and before the Rule 29 motion is made, if ‑‑ Well, in some respects, I think it's sandbagging the government that the night before it's going to the jury, all of a sudden they're moving to strike a portion of an exhibit that they stipulated to on the very first day of trial. But in any event, I ‑‑ Well, we'll just have to look at the record and see what it says. I also think that under Federal Rules of Evidence 803.10 and the self authentication Rule 902.2, the document would be admissible and would support the record of federal insurance in this case, but for jurisdictional insufficiency purposes. If I can spend my remaining time on the sentencing issue. On the which issue? Sentencing. On the cross appeal. Cross appeal. In this case, the Court found that Mr. Lentz's adjusted offense level was 20, which was a guideline range of 33 to 30 to 41 months, and then departed down to a level 17, which was a guideline range of 24 to 30 months and imposed a sentence of 24 months. If I can just start by saying that there's a section in our reply brief saying that the standard of review should be de novo in cases of departure. The issue had not been decided by this circuit at the time that we wrote the brief, but last month in U.S. v. Phillips 356, 5th or 1096 to 1098, this case did not fall within the heartland of the bank fraud guideline. This case at bottom is simply a fraudulent loan and a check hiding scheme. There's nothing about this case that's so exceptional that should take it outside of the heartland that's targeted by the bank fraud statute. There are four reasons that Judge Malloy gave for taking this case to the heartland, the sentencing disparity with Mr. Peterson, the family circumstances of Mr. Lentz raising his children alone, the employment consequences of losing his CPA and attorney licenses, and the fact that he was duped by Mr. Peterson. None of these factors, either alone or in the aggregate, would support a downward departure as far as sentencing disparity is concerned. The downward departure here was purportedly done to equalize Mr. Lentz's sentence with that of Mr. Peterson. But Mr. Peterson, after the Rule 35 motion in the Eastern District of Washington, received a 72-month sentence. Mr. Lentz, before the departure, was eligible for a sentence of 33 to 41 months. By departing downward, Judge Malloy actually increased the disparity rather than equalizing the sentences between the two defendants. In addition, the defendants were not convicted of the same crimes. Mr. Peterson, in fact, was convicted of additional crimes, so it's really impossible to try and equalize sentences between the two defendants as far as the employment consequences are concerned. Mr. Lentz, of course, is going to lose or has lost his CPA and attorney licenses. The Sentencing Commission has said that employment consequences are not ordinarily relevant in determining a defendant's sentence and, in fact, is a discouraged basis for departure. Any lawyer or CPA who's convicted of a felony is going to lose his license. And to grant a departure to a white-collar criminal as opposed to somebody who robs a bank because that person will have more to lose is simply not correct. In addition, Mr. Lentz's law license gave him the resources to commit the crime in this case. He used that law license and his attorney letterhead in order to create the fictitious letters to Maris Baltans and the phony subpoena to Mr. Peterson. And I think that this fact simply undercuts his claim that the loss of his family circumstances are concerned. Mr. Lentz is a single parent. At the time of sentencing in December 2002, he was raising two children, an 18-year-old boy and a 16-year-old girl. There's nothing exceptional about a single parent raising his children. Family situations are always going to be disrupted when a parent goes to prison. And even under the sentence of 24 months that was imposed, both of his children would no longer be minors by the time he got out of prison. These children do not have disabilities. There's no information in the record that somebody else related to the family or somebody unrelated to the family could not care for his daughter, who at this point is almost or is 18. The last reason that the judge gave is that Mr. Peterson, excuse me, Mr. Peterson, there's no question that Mr. Peterson did dupe his co-conspirators into believing that the big deal where they would profit by approximately $26 million was around the corner. But there's, again, nothing extraordinary about a defendant who's conned by a co-defendant during the course of a conspiracy. Even if he was duped as to the gemstone deal, he didn't dupe Lentz into believing that it was okay to steal money from Mountain Bank. Mr. Lentz repeatedly deposited worthless checks into his attorney trust account in order to artificially inflate the balance. He then withdrew funds from that account. He assisted Mr. Allen in fraudulently obtaining $600,000 from Mountain Bank in 1992. He prepared false and fictitious letters to conceal the bank fraud scheme from his creditors and created a fictitious subpoena for Mr. Peterson to conceal the bank fraud scheme from his creditors. The factors used by the district court, either individually or cumulatively, do not justify the downward departure in this case. Thank you. Thank you, counsel. Your time has expired. Mr. Bartlett or Mr. Donovan? Donovan. I'm going to lend my remarks to the sentencing issue. And it's our position that the downward departure was based primarily on the fact that this was outside the heartland for a bank fraud case. And I think the record is repeated with Judge Malloy's words. And these aren't my words. If I may just quickly go through them. It's based on the fact that Judge Malloy perceived this Peterson, that this conviction of Mr. Lentz was based on Mr. Peterson and his big lie or big scam or whatever you want to call it. And he justified the downward departure principally for the reason that this case warrants a downward departure because this conviction, whole or in part, is based on Mr. Peterson. He called Mr. Peterson a con artist, a scam, unbelievable, repeatedly lies under oath, manipulates the facts, bends the truth. And not only do we have a liar here, as we might have or might suspect in a number of cases where co-defendants or whatever are being rewarded for testifying in court. But why does that make this out of the heartland? Well, because it's not just a liar. He's an admitted liar. And these are Judge Malloy's words again, a professional liar, an incorrigible liar, and a pathological. Pathological is probably most important. Mr. Donovan, all of those things would go to why Mr. Peterson ought to be punished. And Mr. Peterson is going to be punished. But it doesn't explain why that justifies a downward departure for your client who has used his account, his attorney's account, in order to foster the things of which the jury found him to be guilty. Well, we would say that Mr. Peterson manipulated our client to use his account in such a way. But Judge Malloy's conclusory remarks was Mr. Peterson distorts the criminal justice system. And I don't think the government has come in here with one case of a witness this bad, a pathological liar combined with everything else, and ultimately a perjurer. Whether we prove that perjury was committed or not, Judge Malloy definitely found him to be a perjurer, you know, whether it was in this court or some other court. And that impacts the reliability of the guidelines and justifies downward departure. If I may just leave a few seconds for Mr. Bartlett. You're already one minute and 22 seconds over time. I'm sorry. Mr. Bartlett lost a little time with that adjustment on the microphone. So less than a minute, Mr. Bartlett. Thank you for your indulgence. The FDIC reference is a transcript 996 through 1011, where we're arguing that paragraph four needs to be stricken or that need to be corrected. So if you'd read that, you would see that we did not waive our objection. We did not stipulate to the exhibit. What happened was that we had a sheet. Are you going to object to authentication? Are you going to object to certain things? And then when the judge says this case is going slow, he admitted all kinds of those without being offered by the government. Our opportunity then was to say, well, gee, Judge, we see that this is different from this, and we are striking it. They had the opportunity. They could have reopened. They could have done other things. So if you're going to say that we stipulated to subject matter jurisdiction, which is a part of it's also an element of the crime, but it's subject matter, there would have had to have been a dialogue between our client when we were raising this. Then if he's going to say, well, you stipulated it to, he would have had to address the defendant. That's what rules and said this is not a waiver argument. This is a stipulation argument. Mr. Lentz, do you stipulate that this element of the crime has been proven by this document that's on sworn? Do you stipulate that there's subject matter jurisdiction? He did not address Mr. Lentz. He did not have that dialogue. We can't be subject to saying that we stipulate to something as important as this when we raised it and there was an opportunity to correct it on the record so it's properly before this court, and we ask you to look at that and find no stipulation. Thank you. Your time has expired. The case just argued will be submitted for decision. And we will now hear argument in Johnson v. the U.S. Forest Service. You can work with the deputy clerk right now. Thank you.
judges: O'scannlain, Rymer, Bybee